# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREG ADKINS, JAMIE ASHTON, PAQUITA BAILY, KENNETH BICKMAN, JAMES BOHN, CHRISTOPHER BROWN, CYNTHIA BULLOCK, CARLOS CORBETT, RANDY COULTER, MICHELLE DAWN RICKARD, JOSEPH EHRINGER, STANLEY FIELDS, GINO FORMAROLI, JR., MIKE FRIEDMAN, ROBERT GREY, JASEN HARRIS, ROGER HARRISON, DIANA HARTLERODE, DONNA HEYNES, DAVE HILT, BRIAN HUGHES, KELSEY KENNEDY, JOHN MAJOR, PATRICK MCPEAK, JOHN PEACHER, MEDHI RIZVI, JAMES SHORTER, CLIFFORD STINSON, JAMES STONE, SANDRA SUTTON, CHRISTIAN WANK, GENE WHITE, SR., AL WILLIAMS, and on behalf of themselves and all others similarly situated, | Case No. 1:21-cv-11361  CLASS ACTION COMPLAINT  DEMAND FOR JURY TRIAL |
| *Plaintiffs*, | |
| v. | |
| KONINKELIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants.* | |

Plaintiffs Greg Adkins ("Plaintiff Adkins"), Jamie Ashton ("Plaintiff Ashton"), Paquita

Baily ("Plaintiff Baily"), Kenneth Bickman ("Plaintiff Bickman"), James Bohn ("Plaintiff

Bohn"), Christopher Brown ("Plaintiff Brown"), Cynthia Bullock ("Plaintiff Bullock"), Carlos

Corbett ("Plaintiff Borbett"), Randy Coulter ("Plaintiff Coulter"), Michelle Dawn Rickard

("Plaintiff Rickard"), Joseph Ehringer ("Plaintiff Ehringer"), Stanley Fields ("Plaintiff Fields"),

Gino Formaroli, Jr. ("Plaintiff Formaroli"), Mike Friedman ("Plaintiff Friedman"), Robert Grey

("Plaintiff Grey"), Jasen Harris ("Plaintiff Harris"), Roger Harrison ("Plaintiff Harrison"), Diana Hartlerode ("Plaintiff Hartlerode"), Donna Heynes ("Plaintiff Heynes"), Dave Hilt ("Plaintiff Hilt"), Brian Hughes ("Plaintiff Hughes"), Kelsey Kennedy ("Plaintiff Kennedy"), John Major ("Plaintiff Major"), Patrick McPeak ("Plaintiff McPeak"), John Peacher ("Plaintiff Peacher"), Medhi Rizvi ("Plaintiff Rizvi"), James Shorter ("Plaintiff Shorter"), Clifford Stinson ("Plaintiff Stinson"), James Stone ("Plaintiff Stone"), Sandra Sutton ("Plaintiff Sutton"), Christian Wank ("Plaintiff Wank"), Gene White, Sr. ("Plaintiff White"), Al Williams ("Plaintiff  Williams") (collectively, "Plaintiffs"), themselves and the class and subclasses of all others similarly situated as defined below, for their complaint against defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances.  On June 14, 2021, Philips issued a recall (the "Recall") of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into particles which may enter the device's pathway and be ingested or inhaled by users of devices

which contain PE-PUR Foam, as well as off-gassing certain chemicals. Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.      On July 22, 2021, the United States Food and Drug Administration classified the recall of Philips devices containing PE-PUR Foam as a Class 1 recall, the most serious type of recall reserved for recalls of devices that may cause serious injuries or death.

4.      Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021. Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*, cancer. Plaintiffs have been advised by Philips to discontinue use of their devices. Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

5.      Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam on behalf of themselves and the proposed Class and Subclasses.

## **PARTIES**

6.      Plaintiff Greg Adkins is a citizen of the State of West Virginia.

7.      Plaintiff Jamie Ashton is a citizen of the Commonwealth of Virginia.

8.      Plaintiff Paquita Baily is a citizen of the State of Michigan.

9.      Plaintiff Kenneth Bickman is a citizen of the State of Louisiana.

10.     Plaintiff James Bohn is a citizen of the State of Connecticut.

11.     Plaintiff Christopher Brown is a citizen of the State of Oregon.

12.     Plaintiff Cynthia Bullock is a citizen of the State of Maryland.

13.    Plaintiff Carlos Corbett is a citizen of the State of Georgia.

14.    Plaintiff Randy Coulter is a citizen of the Commonwealth of Kentucky.

15.    Plaintiff Michelle Dawn Rickard is a citizen of State of West Virginia.

16.    Plaintiff Joseph Ehringer is a citizen of the Commonwealth of Kentucky.

17.    Plaintiff Stanley Fields is a citizen of the Commonwealth of Virginia.

18.    Plaintiff Gino Formaroli, Jr. is a citizen of the State of New Jersey.

19.    Plaintiff Mike Friedman is a citizen of the State of Florida.

20.    Plaintiff Robert Grey is a citizen of the Commonwealth of Pennsylvania.

21.    Plaintiff Jasen Harris is a citizen of the State of Georgia.

22.    Plaintiff Roger Harrison is a citizen of the State of Alabama.

23.    Plaintiff Diana Hartlerode is a citizen of the State of Indiana.

24.    Plaintiff Donna Heynes is a citizen of the State of Wyoming.

25.    Plaintiff Dave Hilt is a citizen of the State of Wisconsin.

26.    Plaintiff Brian Hughes is a citizen of the State of Indiana.

27.    Plaintiff Kelsey Kennedy is a citizen of the State of New Mexico.

28.    Plaintiff John Major is a citizen of the State of Florida.

29.    Plaintiff Patrick McPeak is a citizen of the State of New York.

30.    Plaintiff John Peacher is a citizen of the Commonwealth of Massachusetts.

31.    Plaintiff Medhi Rizvi is a citizen of the State of New York.

32.    Plaintiff James Shorter is a citizen of the State of Ohio.

33.    Plaintiff Clifford Stinson is a citizen of the Commonwealth of Massachusetts.

34.    Plaintiff James Stone is a citizen of the Commonwealth of Kentucky.

35.    Plaintiff Sandra Sutton is a citizen of the State of Texas.

36.     Plaintiff Christian Wank is a citizen of the State of Ohio.

37.     Plaintiff Gene White, Sr. is a citizen of the State of Maryland.

38.     Plaintiff Al Williams is a citizen of the Commonwealth of Kentucky.

39.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands.  Royal Philips is the parent company of Philips NA and Philips RS.

40.     Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V.  Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

41.     Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

---

[1]     *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

43.    Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

44.    The Court has personal jurisdiction over the Defendants. Defendants have transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District.  The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

**FACTUAL BACKGROUND**

I.    **Continuous Positive Airway Pressure Therapy**

45.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea.  CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

46.    Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep

apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## II.    Bi-Level Positive Airway Pressure Therapy

47.    Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea.  Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device.  The inspiratory positive airway pressure assists a person as a breath is taken in.  Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

## III.    Mechanical Ventilation

48.    Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

## SUBSTANTIVE ALLEGATIONS

49.     Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars.  Philips has sold millions of these devices in the United States.

### IV.     Philips Sleep & Respiratory Care Devices Were Endangering its Users

50.     On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

51.     Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philips announced that it had determined that the "PE-

---

[2]     *First Quarter Results*, PHILIPS (Apr. 26 2021),
https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

[3]     *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021),
https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

52.    The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
|---|---|
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |
| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

---

[4]    *Id.*

[5]    Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

[6]    *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
|---|---|
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

53.     According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following: "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8]  Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

---

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

**V.**     <u>**The Health Risks Associated with Use of the Recalled Devices Renders Them**</u>
           <u>**Worthless**</u>

54.     As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

55.     The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions.  Individuals not using life-supporting ventilators must discontinue their use of the Recalled Devices or face health risks as grave as cancer.  If they choose to discontinue use, they must pay for another expensive device in order to receive effective treatment.  Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

56.     Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

57.     As a result of the above, Plaintiffs and the Class will have to undertake considerable expense replacing the Recalled Devices.

---

[10]     *Id.* (emphasis in original).

[11]     *Id.* (emphasis in original).

## VI.    Philips Unreasonably Delayed its Recall

58.    Philips has not disclosed when it first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it is unlikely that Defendants only recently learned of these issues.

59.    Thus, as a result of user reports, Defendants were aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time.  During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health effects, including cancer.

60.    In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing. As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

## VII.    Philips' Recall Provides No Relief to Class Members

61.    As part of its announcement of the recall on June 14, 2021, Philips announced that it would be implementing "a comprehensive repair and replacement program for the affected devices" as follows:

---

[12]    *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.[13]

62.     As the above language makes clear, Philips does not intend to replace the Recalled Devices with its newly manufactured DreamStation 2 device that is not affected by the recall (although individuals can purchase a new Philips DreamStation 2 on their own), but instead intends to switch out the dangerous PE-PUR Foam in each Recalled Device. This is a time-consuming process that will leave Recalled Device users without use of their devices for untold periods of time.

63.     As implemented to date, the "repair and replacement" program has not repaired or replaced a single Recalled Device. Recalled Device users seeking to have their devices repaired or replaced are asked to register their devices on the Philips website, but are provided only with a registration number and no information as to when they can expect their Recalled Devices to be repaired. Upon information and belief, Philips has not provided *any* guidance to *anyone* as to when Recalled Devices will be repaired.

---

[13]     *Id.*

## VIII.    <u>Plaintiff Greg Adkins</u>

64.    Plaintiff Greg Adkins is a citizen and resident of the State of West Virginia.

65.    Plaintiff Adkins owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

66.    Plaintiff Adkins overpaid for a Recalled Device when Plaintiff Adkins purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

67.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Adkins' Recalled Device is now worthless.

## IX.    <u>Plaintiff Jamie Ashton</u>

68.    Plaintiff Jamie Ashton is a citizen and resident of the Commonwealth of Virginia.

69.    Plaintiff Ashton owned, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

70.    Plaintiff Ashton overpaid for a Recalled Device when Plaintiff Ashton purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

71.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ashton's Recalled Device is now worthless.

## X.    <u>Plaintiff Paquita Baily</u>

72.    Plaintiff Paquita Baily is a citizen and resident of the State of Michigan.

73.    Plaintiff Baily owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

74.     Plaintiff Baily overpaid for a Recalled Device when Plaintiff Baily purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

75.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Baily's Recalled Device is now worthless

### XI.     Plaintiff Kenneth Bickman

76.     Plaintiff Kenneth Bickman is a citizen and resident of the State of Louisiana.

77.     Plaintiff Bickman owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

78.     Plaintiff Bickman overpaid for a Recalled Device when Plaintiff Bickman purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

79.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bickman's Recalled Device is now worthless.

### XII.     Plaintiff James Bohn

80.     Plaintiff James Bohn is a citizen and resident of the State of Connecticut.

81.     Plaintiff Bohn regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

82.     Plaintiff Bohn overpaid for a Recalled Device when Plaintiff Bohn purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

83.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bohn's Recalled Device is now worthless.

### XIII. **Plaintiff Christopher Brown**

84.    Plaintiff Christopher Brown is a citizen and resident of the State of Oregon.

85.    Plaintiff Brown regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

86.    Plaintiff Brown overpaid for a Recalled Device when Plaintiff Brown purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

87.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Brown's Recalled Device is now worthless.

### XIV. **Plaintiff Cynthia Bullock**

88.    Plaintiff Cynthia Bullock is a citizen and resident of the State of Maryland.

89.    Plaintiff Bullock regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

90.    Plaintiff Bullock overpaid for a Recalled Device when Plaintiff Bullock purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

91.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bullock's Recalled Device is now worthless.

### XV.    **Plaintiff Carlos Corbett**

92.    Plaintiff Carlos Corbett is a citizen and resident of the State of Georgia. Prior to moving to Georgia in 2021, Plaintiff Corbett resided in the State of Alabama.

93.    Plaintiff Corbett regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

94.    Plaintiff Corbett overpaid for a Recalled Device when Plaintiff Corbett purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

95.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Corbett's Recalled Device is now worthless.

### XVI.    **Plaintiff Randy Coulter**

96.    Plaintiff Randy Coulter is a citizen and resident of the Commonwealth of Kentucky.

97.    Plaintiff Coulter regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

98.    Plaintiff Coulter overpaid for a Recalled Device when Plaintiff Coulter purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

99.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Coulter's Recalled Device is now worthless.

### XVII.   **Plaintiff Michelle Dawn Rickard**

100.    Plaintiff Michelle Dawn Rickard is a citizen and resident of the State of West Virginia.

101.    Plaintiff Rickard owned or leased, and regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

102.    Plaintiff Rickard overpaid for a Recalled Device when Plaintiff Rickard purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

103.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Rickard's Recalled Device is now worthless.

**XVIII.** **Plaintiff Joseph Ehringer**

104.    Plaintiff Joseph Ehringer is a citizen and resident of the Commonwealth of Kentucky.

105.    Plaintiff Ehringer regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

106.    Plaintiff Ehringer overpaid for a Recalled Device when Plaintiff Ehringer purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

107.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Ehringer's Recalled Device is now worthless.

**XIX.** **Plaintiff Stanley Fields**

108.    Plaintiff Stanley Fields is a citizen and resident of the Commonwealth of Virginia.

109.    Plaintiff Fields regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

110.     Plaintiff Fields overpaid for a Recalled Device when Plaintiff Fields purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

111.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Fields' Recalled Device is now worthless.

**XX.    Plaintiff Gino Formaroli, Jr.**

112.     Plaintiff Gino Formaroli, Jr. is a citizen and resident of the State of New Jersey.

113.     Plaintiff Formaroli regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

114.     Plaintiff Formaroli overpaid for a Recalled Device when Plaintiff Formaroli purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

115.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Formaroli's Recalled Device is now worthless.

**XXI.   Plaintiff Mike Friedman**

116.     Plaintiff Mike Friedman is a citizen and resident of the State of Florida.

117.     Plaintiff Friedman regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

118.     Plaintiff Friedman overpaid for a Recalled Device when Plaintiff Friedman purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

119.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Friedman's Recalled Device is now worthless.

## XXII.  **Plaintiff Robert Grey**

120.    Plaintiff Robert Grey is a citizen and resident of the Commonwealth of Pennsylvania.

121.    Plaintiff Grey regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

122.    Plaintiff Grey overpaid for a Recalled Device when Plaintiff Grey purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

123.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Grey's Recalled Device is now worthless.

## XXIII. **Plaintiff Jasen Harris**

124.    Plaintiff Jasen Harris is a citizen and resident of the State of Georgia.

125.    Plaintiff Harris regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

126.    Plaintiff Harris overpaid for a Recalled Device when Plaintiff Harris purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

127.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Harris' Recalled Device is now worthless.

## XXIV. **Plaintiff Roger Harrison**

128.    Plaintiff Roger Harrison is a citizen and resident of the State of Alabama.

129.    Plaintiff Harrison regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

130.    Plaintiff Harrison overpaid for a Recalled Device when Plaintiff Harrison purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

131.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Harrison's Recalled Device is now worthless.

**XXV.   Plaintiff Diana Hartlerode**

132.    Plaintiff Diana Hartlerode is a citizen and resident of the State of Indiana.

133.    Plaintiff Hartlerode regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

134.    Plaintiff Hartlerode overpaid for a Recalled Device when Plaintiff Hartlerode purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

135.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hartlerode's Recalled Device is now worthless.

**XXVI. Plaintiff Donna Heynes**

136.    Plaintiff Donna Heynes is a citizen and resident of the State of Wyoming.

137.    Plaintiff Heynes regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

138.    Plaintiff Heynes overpaid for a Recalled Device when Plaintiff Heynes purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

139.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Heynes' Recalled Device is now worthless.

21

XXVII.   **Plaintiff Dave Hilt**

140.    Plaintiff Dave Hilt is a citizen and resident of the State of Wisconsin.

141.    Plaintiff Hilt regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

142.    Plaintiff Hilt overpaid for a Recalled Device when Plaintiff Hilt purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

143.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hilt's Recalled Device is now worthless.

XXVIII.   **Plaintiff Brian Hughes**

144.    Plaintiff Brian Hughes is a citizen and resident of the State of Indiana.

145.    Plaintiff Hughes regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

146.    Plaintiff Hughes overpaid for a Recalled Device when Plaintiff Hughes purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

147.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Hughes' Recalled Device is now worthless.

XXIX.  **Plaintiff Kelsey Kennedy**

148.    Plaintiff Kelsey Kennedy is a citizen and resident of the State of New Mexico.

149.    Plaintiff Kennedy regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

150.    Plaintiff Kennedy overpaid for a Recalled Device when Plaintiff Kennedy purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

151.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Kennedy's Recalled Device is now worthless.

**XXX.  Plaintiff John Major**

152.    Plaintiff John Major is a citizen and resident of the State of Florida.

153.    Plaintiff Major regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

154.    Plaintiff Major overpaid for a Recalled Device when Plaintiff Major purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

155.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Major's Recalled Device is now worthless.

**XXXI. Plaintiff Patrick McPeak**

156.    Plaintiff Patrick McPeak is a citizen and resident of the State of New York.

157.    Plaintiff McPeak regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

158.    Plaintiff McPeak overpaid for a Recalled Device when Plaintiff McPeak purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

159.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff McPeak's Recalled Device is now worthless.

XXXII.    **Plaintiff John Peacher**

160.    Plaintiff John Peacher is a citizen and resident of the Commonwealth of Massachusetts.

161.    Plaintiff Peacher regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

162.    Plaintiff Peacher overpaid for a Recalled Device when Plaintiff Peacher purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

163.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Peacher's Recalled Device is now worthless.

XXXIII.    **Plaintiff Medhi Rizvi**

164.    Plaintiff Medhi Rizvi is a citizen and resident of the State of New York.

165.    Plaintiff Rizvi regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

166.    Plaintiff Rizvi overpaid for a Recalled Device when Plaintiff Rizvi purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

167.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Rizvi's Recalled Device is now worthless.

XXXIV.    **Plaintiff James Shorter**

168.    Plaintiff James Shorter is a citizen and resident of the State of Ohio.

169.    Plaintiff Shorter regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

24

170.    Plaintiff Shorter overpaid for a Recalled Device when Plaintiff Shorter purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

171.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Shorter's Recalled Device is now worthless.

**XXXV.    Plaintiff Clifford Stinson**

172.    Plaintiff Clifford Stinson is a citizen and resident of the Commonwealth of Massachusetts.

173.    Plaintiff Stinson regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

174.    Plaintiff Stinson overpaid for a Recalled Device when Plaintiff Stinson purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

175.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Stinson's Recalled Device is now worthless.

**XXXVI.    Plaintiff James Stone**

176.    Plaintiff James Stone is a citizen and resident of the Commonwealth of Kentucky.

177.    Plaintiff Stone regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

178.    Plaintiff Stone overpaid for a Recalled Device when Plaintiff Stone purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

179.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Stone's Recalled Device is now worthless.

### XXXVII.  Plaintiff Sandra Sutton

180.    Plaintiff Sandra Sutton is a citizen and resident of the State of Texas.

181.    Plaintiff Sutton regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

182.    Plaintiff Sutton overpaid for a Recalled Device when Plaintiff Sutton purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

183.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Sutton's Recalled Device is now worthless.

### XXXVIII. Plaintiff Christian Wank

184.    Plaintiff Christian Wank is a citizen and resident of the State of Ohio.

185.    Plaintiff Wank regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

186.    Plaintiff Wank overpaid for a Recalled Device when Plaintiff Wank purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

187.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Wank's Recalled Device is now worthless.

### XXXIX.  Plaintiff Gene White, Sr.

188.    Plaintiff Gene White, Sr. is a citizen and resident of the State of Maryland.

189.   Plaintiff White regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

190.   Plaintiff White overpaid for a Recalled Device when Plaintiff White purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

191.   As a result of the health risks associated with the use of Recalled Devices, Plaintiff White's Recalled Device is now worthless.

**XL.   Plaintiff Al Williams**

192.   Plaintiff Al Williams is a citizen and resident of the Commonwealth of Kentucky.

193.   Plaintiff Williams regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

194.   Plaintiff Williams overpaid for a Recalled Device when Plaintiff Williams purchased or leased a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

195.   As a result of the health risks associated with the use of Recalled Devices, Plaintiff Williams' Recalled Device is now worthless.

## TOLLING AND ESTOPPEL

### I.   DISCOVERY RULE TOLLING

196.   Plaintiffs, the Class, and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

197.   Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein.  Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that

27

would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

198.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

199.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

200.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses.  Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct.  For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

201.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

202.    Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

203.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**ALABAMA SUBCLASS**: all persons who were or are citizens of the State of Alabama who, from the beginning of any applicable limitations period through June 14, 2021,

purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Alabama Subclass").

204.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**CONNECTICUT SUBCLASS**: all persons who were or are citizens of the State of Connecticut who, from the beginning of any applicable limitations period through June 14, 2021, purchased one of the Recalled Devices for household or business use, and not for resale (the "Connecticut Subclass").

205.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**FLORIDA SUBCLASS:** all persons who were or are citizens of the State of Florida who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Florida Subclass").

206.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**GEORGIA SUBCLASS:** all persons who were or are citizens of the State of Georgia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Georgia Subclass").

207.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**INDIANA SUBCLASS:**  all persons who were or are citizens of the State of Indiana who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Indiana Subclass").

208.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**KENTUCKY SUBCLASS:** all persons who were or are citizens of the Commonwealth of Kentucky who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Kentucky Subclass").

209.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**LOUISIANA SUBCLASS:**  all persons who were or are citizens of the State of Louisiana who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Louisiana Subclass").

210.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MARYLAND SUBCLASS:** all persons who were or are citizens of the State of Maryland who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Maryland Subclass").

211.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MASSACHUSETTS SUBCLASS:** all persons who were or are citizens of the Commonwealth of Massachusetts who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Massachusetts Subclass").

212.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MICHIGAN SUBCLASS:** all persons who were or are citizens of the State of Michigan who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Michigan Subclass").

213.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW JERSEY**: all persons who were or are citizens of the State of New Jersey who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Jersey Subclass").

214.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW MEXICO**: all persons who were or are citizens of the State of New Mexico who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Mexico Subclass").

215.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW YORK**: all persons who were or are citizens of the State of New York who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New York Subclass").

216.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**OHIO SUBCLASS**: all persons who were or are citizens of the State of Ohio who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Ohio Subclass").

217.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**OREGON SUBCLASS**: all persons who were or are citizens of the State of Oregon who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Oregon Subclass").

218.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**PENNSYLVANIA SUBCLASS:** all persons who were or are citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Pennsylvania Subclass").

219.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**TEXAS SUBCLASS**: all persons who were or are citizens of the State of Texas who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Texas Subclass").

220.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**VIRGINIA SUBCLASS**: all persons who were or are citizens of the Commonwealth of Virginia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Virginia Subclass").

221.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WEST VIRGINIA SUBCLASS**: all persons who were or are citizens of the State of West Virginia who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "West Virginia Subclass").

222.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WISCONSIN SUBCLASS**: all persons who were or are citizens of the State of Wisconsin who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Wisconsin Subclass").

223.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**WYOMING SUBCLASS**: all persons who were or are citizens of the State of Wyoming who, from the beginning of any applicable limitations period through June 14, 2021,

purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Wyoming Subclass").

224.    Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

225.    Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

226.    **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

227.    **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

228.    **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

229. **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

230. **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

231. **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of

this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

232.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

233.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.  Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

234.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

235.    Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and State Subclasses.

236.    Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe and appropriate for human use.

237.    Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class and State Subclasses entered into upon purchasing the Recalled Devices.

238.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and State Subclasses.  Plaintiffs and the Class and State Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

239.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

240.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and

was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, and safety of Recalled Devices.

241.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and State Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

242.    Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

243.    The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and State Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and State Subclasses at the time of purchase of the Recalled Devices.

244.    As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

245.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and State Subclasses to rely on such representations.

246.    Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and State Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

247.    All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or State Subclasses.

248.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here.  Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports.  Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiffs and members of the Class and State Subclasses, but failed to do so until now.

249.    As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and State Subclasses have been damaged because they did not receive the products as specifically warranted by Philips.  Plaintiffs and members of the Class and State Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

250.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

251.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

252.    Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and State Subclasses.

253.    There was a sale of goods from Philips to Plaintiffs and the Class and State Subclasses.

254.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and State Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class and State Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

255.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

256.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

257.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

258.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

259.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

260.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

261.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

262.    Philips falsely represented to Plaintiffs and the Class and State Subclasses that the Recalled Devices were safe for human use.

263.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and State Subclasses to purchase Recalled Devices.

264.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of causing adverse health

effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements. Philips knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and State Subclasses.

265.    Plaintiffs and the Class and State Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment. Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' and State Subclasses' reliance on Philips' misrepresentations was justifiable.

266.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

267.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

### (on behalf of Nationwide Class or, alternatively, the State Subclasses)

268.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

269.    Philips concealed from and failed to disclose to Plaintiffs and the Class and State Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

270.    Philips was under a duty to disclose to Plaintiffs and the Class and State Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and State Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

271.    The facts concealed or not disclosed by Philips to Plaintiffs and the Class and State Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

272.    Plaintiffs and the Class and State Subclasses justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

273.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

274.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

42

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

### (on behalf of the Nationwide Class or, alternatively, the State Subclasses)

275.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

276.    Philips had a duty to Plaintiffs and the Class and State Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

277.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

278.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

279.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and State Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known

they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

280.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

281.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

282.    Plaintiffs and the Class and State Subclasses conferred substantial benefits on Philips through their purchase of Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these benefits.

283.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and State Subclasses were given with the expectation that the Recalled Devices would have the qualities, characteristics, and suitability for use represented and warranted by Philips.  As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

284.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and State Subclasses.

285.    Plaintiffs and the Class and State Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

44

286.    Plaintiffs and the Class and State Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

## ALABAMA DECEPTIVE TRADE PRACTICES ACT—DECEPTION

### Ala. Code §§ 8-19-1 *et seq.*

**(on behalf of Plaintiffs Roger Harrison, Carlos Corbett, and the Alabama Subclass)**

287.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

288.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

289.    At all relevant times, Defendants were either natural persons or corporations, trusts, partnerships, incorporated or unincorporated associations or some other legal entity.

290.    The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

291.    At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

292.    The Alabama Deceptive Trade Practices Act declares that (1) passing off goods or services as those of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services; (4) using deceptive representations or designations of geographic origin in connection with goods or services; (5) representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have; (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased; (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (8) disparaging the goods, services, or business of another by false or misleading representation of fact; (9) advertising goods or services with intent not to sell them as advertised; (10) advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions; and (12) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; is unlawful. *See* Ala. Code § 8-19-5.

293.    The Alabama Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) up to three times any actual damages. *See* Ala. Code § 8-19-10.

294.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

295.    Defendants knew that their statements were false or that their conduct was deceptive because, on information and belief, they routinely received complaints regarding the degradation of the PE-PUR Foam used in the Recalled Devices.

296.    The facts that Defendants misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendants' Recalled Devices.

297.    Defendants' misrepresentations, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

298.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

299.    Because the characteristics of the Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of the Recalled Devices was less than the value the Recalled Devices would have had the Recalled Devices actually possessed the characteristics that were represented.

300.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

301.    Instead, as a result of Defendants' misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented which denied them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

302.    Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

## EIGHTH CLAIM FOR RELIEF

### ALABAMA DECEPTIVE TRADE PRACTICES ACT—UNCONSCIONABILITY

### Ala. Code §§ 8-19-1 *et seq.*

### (on behalf of Plaintiffs Roger Harrison, Carlos Corbett, and the Alabama Subclass)

303.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

304.    Plaintiffs Vickey Hunter and Keith Penberthy bring this claim individually and on behalf of the members of the Alabama Subclass.

305.    This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

306.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendants' Recalled Devices detailed above for personal, family or household use.

307.    At all relevant times, Defendants were either a natural person or corporation, trust, partnership, incorporated or unincorporated association or some other legal entity.

308.    The Recalled Devices are "goods" as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(3).

309.    At all relevant times, Defendants were engaged in Trade or Commerce as defined by the Alabama deceptive trade Practice Act. *See* Ala. Code § 8-19-3(8).

310.    The Alabama Deceptive Trade Practices Act declares that engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce is unlawful. *See* Ala. Code § 8-19-5.

311.    The Alabama Deceptive Trade Practices Act further that any person who commits an unlawful practice under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) Up to three times any actual damages. *See* Ala. Code § 8-19-10.

312.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising and sale of the Recalled Devices detailed above, knowingly engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

313.    Defendants knew that their statements were false or that their conduct was unconscionable because there was an absence of meaningful choice on Plaintiffs' part.

314.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

315.     Because the characteristics of Defendants' Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the Recalled Devices, the value of the Recalled Devices was less than the value the Recalled Devices would have had if the Recalled Devices had actually possessed the characteristics that were represented.

316.     Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased or leased Defendants' Recalled Devices or would have paid less for those products.

317.     Instead, as a result of Defendants' misrepresentations and/or omissions, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received, causing them out-of-pocket damages.

318.     Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

319.     Plaintiffs provided Defendants with pre-suit notice pursuant to Ala. Code § 8-19-10(e) by sending a certified letter, return receipt requested, containing the basis of Plaintiffs' claims on August 18, 2021. Defendants' counsel of record was provided a copy of the letter via email on August 18, 2021.

## NINTH CLAIM FOR RELIEF

### CONNECTICUT UNFAIR TRADE PRACTICES ACT

### Conn. Gen. Stat. §§ 42-110a *et seq.*

#### (on behalf of Plaintiff Bohn and the Connecticut Subclass)

320.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

321.   Plaintiff Bohn and members of the Connecticut Subclass are residents of the State of Connecticut.

322.   Each Defendant is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

323.   Plaintiff Bohn and members of the Connecticut Subclass are actual or potential consumers of Recalled Devices.

324.   At all times mentioned herein, Philips engaged in "trade" or "commerce" in Connecticut as defined by Conn. Gen. Stat. § 42-110(a)(4), in that they engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

325.   The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b(a).

326.   For the reasons discussed herein, Philips violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

327.    Philips repeatedly advertised on the labels for Recalled Devices, on its websites, and through national advertising campaigns, that Recalled Devices were and are safe for use by individuals. Philips failed to disclose the material information that Recalled Devices contained an unsafe material, PE-PUR Foam, which could cause a Recalled Device to suffer adverse health effects from use of the Recalled Devices.

328.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff and Connecticut Subclass Members in the form of the loss or diminishment of value of Recalled Devices Plaintiff and Connecticut Subclass Members purchased, which allowed Philips to profit at the expense of Plaintiff and Connecticut Subclass Members. The injuries to Plaintiff and Connecticut Subclass Members were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

329.    Plaintiff Bohn and members of the Connecticut Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by C.G.S. § 42-110g and applicable law.

## TENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 *et seq.*

### (on behalf of Plaintiff Mike Friedman, Plaintiff John Major, and the Florida Subclass)

330.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

331.    Plaintiff Mike Friedman, Plaintiff John Major, and Florida Subclass members are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Philips are "goods"

within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

332.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

333.    For the reasons discussed herein, Philips violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, et seq. Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

334.    At all times mentioned herein, Philips engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

335.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its websites, and through national advertising campaigns, among other items, that the Recalled Devices were and are safe for use by individuals when in fact they contain an unsafe material, PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from use of the Recalled Devices.

336.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the Recalled Devices contained an unsafe material that could cause adverse health effects. As a

direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Mike Friedman, John Major, and the Florida Subclass suffered damages by purchasing the Recalled Devices because they would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

337.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Mike Friedman, John Major, and the Florida Subclass in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiff Mike Friedman, John Major, and the Florida Subclass. The injuries to Plaintiff Mike Friedman, John Major, and the Florida Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

338.    Plaintiff Mike Friedman, John Major, and the Florida Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## ELEVENTH CLAIM FOR RELIEF

## GEORGIA FAIR BUSINESS PRACTICE ACT

### Ga. Code Ann. §§ 10-1-390, *et seq.*

### (on Behalf of Plaintiff Jasen Harris, Plaintiff Carlos Corbett, and the Georgia Subclass)

339.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

340.    Plaintiff Jasen Harris and Plaintiff Carlos Corbett Plaintiff bring this claim individually and on behalf of the Georgia Subclass.

341.    Georgia's Fair Business Practices Act prohibits the "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."

342.    Georgia's Fair Business Practices Act specifically declares unlawful, among other things: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; and (3) advertising goods or services with intent not to sell them as advertised.

343.    Georgia's Fair Business Practice Act further provides that any person who suffers injury or damages as a result of a violation of the Act, as a result of consumer acts or practices in violation of this part may bring an action against the person or persons engaged in such violations to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof.

344.    At all relevant times, members of the Georgia Subclass and Defendants were either a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

345.    Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Ga. Code Ann. § 10-1-393(a) as described in the allegations above.

346.    Specifically, Defendants' acts and practices described above violated the Georgia Fair Business Practice Act's prohibitions on (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have in that Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to developing dangerous health conditions as a result of the dangerous PE-PUR Foam material; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another in that Defendants' the Recalled Devices carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing themselves to health risks from exposure to and the degradation of the PE-PUR Foam used in the Recalled Devices; and (3) advertising goods or services with intent not to sell them as advertised in that Defendants advertised the Recalled Devices as safe, legally compliant products which consumers could use without unduly exposing themselves to development of dangerous health condition as a result of their exposure to and the degradation of the PE-PUR Foam found in the Recalled Devices when Defendants knew the Recalled Devices were not.

347.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce.

348.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

349.    Defendants' misrepresentations and omissions discussed above had the capacity to deceive and did deceive Plaintiffs and Class members.

350.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

351.    Instead, as a result of Defendants' misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

352.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it is inequitably enriching Defendants at the expense of the Georgia Subclass.

353.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Georgia Subclass has little alternative but to submit and causes consumers substantial injury.

354.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

355.    The Georgia Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

356.    As a direct and proximate result of the foregoing acts and practices, Defendants has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

357.    Plaintiffs provided Defendants with pre-suit notice pursuant to Ga. Code Ann. §

10-1-399(b) by sending a certified letter, return receipt requested, containing the basis of

Plaintiffs' claims on August 18, 2021. Defendants' counsel of record was provided a copy of the

letter via email on August 18, 2021.

## TWELFTH CLAIM FOR RELIEF

### KENTUCKY CONSUMER PROTECTION ACT

### Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*

### (on behalf of Plaintiff Mary Smith and the Kentucky Subclass)

358.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

359.    Plaintiff Randy Coulter, Plaintiff Joseph Ehringer, Plaintiff James Stone, and

Plaintiff Al Williams bring this claim individually and on behalf of the Kentucky Subclass.

360.    Kentucky's Consumer Protection Act ("Kentucky CPA") prohibits any "[u]nfair,

false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

361.    The Kentucky CPA further provides that any person who purchases or leases

goods or services primarily for personal, family or household purposes and thereby suffers any

ascertainable loss of money or property, real or personal, as a result of the use or employment by

another person of an unfair, false, misleading or deceptive act or practice may bring an action to

recover actual damages.

362.    At all relevant times, members of the Kentucky Subclass and Defendants were

either natural persons, corporations, trusts, partnerships, incorporated or unincorporated

associations, or another legal entity.

363.    Defendants willfully and purposefully engaged in deceptive and unfair acts and

practices, misrepresentation, and the concealment, suppression, and omission of material facts in

connection with trade or commerce in violation of Ky. Rev. Stat. Ann. § 367.170(1) as described in the allegations above.

364.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce.

365.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

366.    Plaintiffs, Class members, and Kentucky Subclass members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

367.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, Class members, and Kentucky Subclass members, suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented, denying them of the benefit of their bargain; and (2) Plaintiffs, Class members, and Kentucky Subclass members, paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

368.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it is inequitably enriching Defendants at the expense of the Kentucky Subclass.

369.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Kentucky Subclass has little alternative but to submit and causes consumers substantial injury.

370.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

371.     Plaintiffs, Class members, and Kentucky Subclass members have suffered economic injury as a direct and proximate result of Defendants' conduct.

372.     As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

## THIRTEENTH CLAIM FOR RELIEF

### LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### La. Rev. Stat. Ann. §§ 51:1401, *et seq.*

### (on behalf Plaintiff Kenneth Bickman and the Louisiana Subclass)

373.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

374.     Plaintiff Kenneth Bickman brings this Claim individually and on behalf of the Louisiana Subclass.

375.     At all relevant times, members of the Louisiana Subclass and Defendants were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

376.     At all relevant times, Defendants were engaged in "trade" or "commerce" as defined by La. Rev. Stat. Ann. §§ 51:1402(10).

377.    Louisiana's Unfair Trade Practices and Consumer Protection Law prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. §§ 51:1405(A).

378.    Louisiana's Unfair Trade Practices and Consumer Protection Law further provides that any person who suffers any ascertainable loss of money as a result of the use or employment by another person of an unfair or deceptive method, act, or practice may bring an action to recover actual damages.

379.    Defendants negligently, willfully, purposefully and/or wantonly and recklessly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection its advertising, offering for sale, sale, or distribution of property, in violation of La. Rev. Stat. Ann. § 51:1405(A) as described in the allegations above.

380.    Defendants' misrepresentations and omissions in the sale of the Recalled devices detailed above is an act or practice in the conduct of trade or commerce.

381.    Defendants' misrepresentations and omissions in the sale of its Recalled Devices detailed above impacts the public interest.

382.    Plaintiffs, the Class, and the Louisiana Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased the Recalled Devices or would have paid less for those products.

383.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Louisiana Subclass suffered monetary losses in that (1) the actual value of the Recalled Devices received was less than the value of the Recalled Devices as represented denying them of the

benefit of their bargain; and (2) Plaintiffs, the Class, and the Louisiana Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

384.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the Louisiana Subclass.

385.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Louisiana Subclass had little alternative but to submit and causes consumers substantial injury.

386.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of devices is responsible for ensuring that they are fit for human use.

387.    Plaintiffs, the Class, and the Louisiana Subclass have suffered economic injury as a direct and proximate result of the Defendants' conduct.

388.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

389.    The Louisiana Subclass seeks relief pursuant to La. Rev. Stat. Ann. § 51:1409, including, *inter alia*, treble damages, attorney's fees, and costs.

## FOURTEENTH CLAIM FOR RELIEF

## MASSACHUSETTS CONSUMER PROTECTION ACT

## Mass. Gen. Laws ch. 93, §§1, *et seq.*

## (on behalf of the Nationwide Class, or alternatively Plaintiff John Peacher, Plaintiff Clifford Stinson, and the Massachusetts Subclass)

390.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

391.   Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A §1, *et seq.* ("MCPL") against Defendants. Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts. Plaintiffs provided noticed pursuant to M.G.L. ch. 93A §9(3) to Defendant Philips NA on August 18, 2021 by mailing a letter via certified mail, return receipt requested as well as by providing Defendants' counsel of record with an electronic copy via email on the same date. This Count provides notice that this Complaint shall be amended to demand all appropriate relief once the statutory period for a response has passed, subject to any response by Defendant Philips NA.

392.   Each Defendant is a "person" as defined by M.G.L.A. 93A §1(a).

393.   Plaintiffs, members of the Class, and members of the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

394.   Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A §2(a), including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A §2(a);

(b)    Represented that Recalled Devices are safe for use, in violation of 93A §2(a);

(c)     Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A §2(a); and

(d)     Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Devices users were at risk of suffering adverse health effects, in violation of 93A §2(a).

395.    As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, the Class, and the Massachusetts Subclass.

396.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use.  As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, the Class, and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

397.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, the Class, and the Massachusetts Subclass in the form of the loss or diminishment of value of Recalled Devices Plaintiffs, the Class, and the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of Plaintiffs, members of the Class, and members of the Massachusetts Subclass. The injuries to Plaintiffs, the Class, and the Massachusetts Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

398.    Plaintiffs, the Class, and the Massachusetts Subclass seek relief under 93A §9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

**FIFTEENTH CLAIM FOR RELIEF**

**MARYLAND CONSUMER PROTECTION ACT**

**Md. Code Ann. Com. Law §§13-101, *et seq*.**

**(on behalf of Plaintiff Cynthia Bullock, Plaintiff Gene White, Sr.,**

**and the Maryland Subclass)**

399.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

400.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair, abusive or deceptive trade practice in the sale or lease of consumer goods or services.

401.    The Maryland CPA also provides that unfair, abusive, or deceptive trade practices include, among other things, any:  (1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) representation that: (i) consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; or (ii) consumer goods, consumer, realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) failure to state a material fact if the failure deceives or tends to deceive; and (4) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) the promotion or sale of any consumer goods, consumer realty, or consumer service.

402.    The Maryland CPA further provides that any person may bring an action to recover for injury or loss sustained by him as the result of an unfair, abusive or deceptive practice.

403.    At all relevant times, Plaintiffs, the Class, the Maryland Subclass, and each Defendant were either individuals, corporations, business trusts, statutory trusts, estates, trusts, partnerships, associations, two or more persons having a joint or common interest, or another legal or commercial entity.

404.    Philips willfully engaged in unfair, abusive, and deceptive trade practices as described in the allegations above.

405.    Philips' conduct violates several provisions of the Maryland CPA, including but not limited to:

> (a) Section 13-301(1):  Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers - here, Philips' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;
>
> (b) Section 13-301(2)(b)(i): Representing that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not – Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;
>
> (c) Section 13-301(2)(b)(ii): Representing that consumer good, consumer realty, or consumer services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another - Philips' Recalled Devices carried with them the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to the adverse health effects caused by PE-PUR Foam degradation;
>
> (d) Section 13-301(3):  Failing to state a material fact if the failure deceives or tends to deceive - Defendants failed to state the material fact that the Recalled Devices contained PE-PUR Foam which was at risk of degradation and causing adverse health effects to Recalled Device users, which both

tends to deceive and did deceive Plaintiff Bullock, Plaintiff White, and the Maryland Subclass; and

(e) Section 13-301(9)(I): Committing deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with the promotion or sale of any consumer goods - Philips deceived Plaintiff Bullock, Plaintiff White, and the Maryland Subclass by misrepresenting the Recalled Devices as safe devices by knowingly concealing, suppressing, and omitting from all marketing the material fact that the Recalled Devices contained unsafe PE-PUR Foam.

406. Philips' omissions in violation of the Maryland CPA were likely to mislead an ordinary consumer. Plaintiff Bullock, Plaintiff White, and the Maryland Subclass reasonably understood Philips' omissions to mean that the Recalled Devices did not pose dangers to Recalled Devices users due to the PE-PUR Foam in the Recalled Devices. Plaintiff Bullock, Plaintiff White, and the Maryland Subclass also reasonably understood Philips' omissions to mean that the Recalled Devices were not of substandard quality.

407. If Philips had disclosed that its Recalled Devices contained toxins at levels that are dangerous to users of the Recalled Devices and were of substandard quality, Plaintiff Bullock, Plaintiff White, and the Maryland Subclass would have been aware that the Recalled Devices contained dangerous PE-PUR Foam and was of substandard quality, and Plaintiff Bullock, Plaintiff White, and the Maryland Subclass would not have purchased Philips' Recalled Devices.

408. Plaintiff Bullock, Plaintiff White, and the Maryland Subclass were deceived by Philips' deceptive and unfair acts and practices in that had they known the truth they would not have purchased the Recalled Devices or would have paid less for the Recalled Devices.

409. Instead, as a result of Philips' misrepresentation, Plaintiff Bullock, Plaintiff White, and the Maryland Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the Recalled Devices as represented denying them of the

benefit of their bargain; and (2) Plaintiff Bullock, Plaintiff White, and the Maryland Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

410.    Plaintiff Bullock, Plaintiff White, and the Maryland Subclass relied to their detriment on Philips' omissions in purchasing the Recalled Devices.

411.    Therefore, Plaintiff Bullock, Plaintiff White, and the Maryland Subclass are entitled to damages and equitable relief under the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§13-101, *et seq.*

### SIXTEENTH CLAIM FOR RELIEF

### MICHIGAN CONSUMER PROTECTION ACT

### Mich. Comp. Laws §§ 445.901, *et seq.*

### (on behalf of Plaintiff Paquita Baily and the Michigan Subclass)

412.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

413.    Plaintiff Paquita Baily brings this Count individually and on behalf of the Michigan Subclass.

414.    Michigan's Consumer Protection Act makes unlawful "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

415.    At all relevant times, members of the Michigan Subclass and Defendants were "persons" within the meaning of the Michigan Consumer Protection Act. *See* Mich. Comp. Laws § 445.902(d).

416.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts

they intended others to rely upon in connection with trade or commerce in violation of Mich.

Comp. Laws § 445.903(1) as described in the allegations above, including but not limited to:

> Mich. Comp. Laws § 445.903(1)(c):  Representing that goods or services have… characteristics… that they do not have.…;

> Mich. Comp. Laws § 445.903(1)(e):  Representing that goods or services are of a particular standard… if they are of another;

> Mich. Comp. Laws § 445.903(1)(i):   Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

> Mich. Comp. Laws § 445.903(1)(s):  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

> Mich. Comp. Laws § 445.903(1)(bb): Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

> Mich. Comp. Laws § 445.903(1)(cc): Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

417.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices are acts or practices in the conduct of trade or commerce.

418.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

419.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

420.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Michigan Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the Recalled Devices as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Michigan Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

421.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched the Defendants at the expense of Plaintiffs, the Class, and the Michigan Subclass.

422.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they offend public policy, and re so oppressive that Plaintiffs, the Class, and the Michigan Subclass had little alternative but to submit and cause consumers substantial injury.

423.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of devices is responsible for ensuring that they are fit for human use.

424.    Plaintiffs, the Class, and the Michigan Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

425.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

426.    Plaintiffs, the Class, and the Michigan Subclass seek relief including, *inter alia*, injunctive relief, damages, attorneys' fees, and costs pursuant to Mich. Comp. Law § 445.911

## SEVENTEENTH CLAIM FOR RELIEF

## NEW JERSEY CONSUMER FRAUD ACT

### N.J. Stat. Ann. §§ 56:8-1, *et seq.*

427.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

428.    Plaintiff Gino Formaroli Jr. brings this claim individually and on behalf of the New Jersey Subclass.

429.    New Jersey's Consumer Fraud Act ("New Jersey CFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." *See* N.J. Stat. Ann. §56:8-2.

430.    At all relevant times, members of the New Jersey Subclass and Defendants were "persons" within the meaning of the New Jersey CFA. *See* N.J. Stat. Ann. § 56:8-1(d).

431.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of the merchandise as defined by N.J. Stat. Ann. § 56:8-1(c) in violation of N.J. Stat. Ann. § 56:8-2 as described in the allegations above.

432.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce.

433.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

71

434.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the New Jersey Subclass.

435.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offended public policy, and were so oppressive that Plaintiffs, the Class, and the New Jersey Subclass had little alternative but to submit, which caused consumers substantial injury.

436.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

437.    Plaintiffs, the Class, and the New Jersey Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

438.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

439.    As a result, Plaintiffs, the Class, and the New Jersey Subclass seek relief including, *inter alia*, refund of amounts recovered by Defendants for the Recalled Devices, injunctive relief, damages, treble damages, attorney's fees, and costs pursuant to N.J. Stat. Ann. §§ 56:8-2.11 and 56:8-19.

## EIGHTEENTH CLAIM FOR RELIEF

## NEW MEXICO UNFAIR PRACTICES ACT

### N.M. Stat. Ann. §§ 57-12-1, *et seq.*

440.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

441.     Plaintiff Kelsey Kennedy brings this claim individually and on behalf of the New Mexico Subclass.

442.     New Mexico's Unfair Practices Act ("New Mexico UPA") prohibits any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

443.     At all relevant times, members of the New Mexico Subclass and Defendants were "persons" within the meaning of the New Mexico UPA. *See* N.M. Stat. Ann. § 57-12-1(A).

444.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.M. Stat. Ann. § 57-12-3 as described in the allegations above.

445.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

446.     Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the New Mexico Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic PE-PUR Foam and were not dangerous to users' health. Plaintiffs, the Class, and the New Mexico Subclass also

reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

447.    If Defendants had disclosed that the Recalled Devices were dangerous to consumers' health and were of substandard quality, Plaintiffs, the Class, and the New Mexico Subclass would have been aware that the Recalled Devices contained dangerous PE-PUR Foam, were dangerous to consumers' health, and were of substandard quality, and Plaintiffs, the Class, and the New Mexico Subclass would not have purchased Defendants' Recalled Devices.

448.    Plaintiffs, the Class, and the New Mexico Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

449.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

450.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the New Mexico Subclass.

451.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they offend public policy, and were so oppressive that the New Mexico Subclass had little alternative but to submit, which caused consumers substantial injury.

452.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

453.    Plaintiffs, the Class, and the New Mexico Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

454.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

455.    Plaintiffs, the Class, and the New Mexico Subclass seek relief including, *inter alia*, injunctive relief, damages, and attorneys' fees, and costs pursuant to N.M. Stat. Ann. § 57-12-10.

## NINETEENTH CLAIM FOR RELIEF

### NEW YORK GENERAL BUSINESS LAW

### N.Y. Gen. Bus. Law §349, et seq.

### (on behalf of Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass)

456.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

457.    New York General Business Law ("GBL") §349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ."  GBL §349(a).

458.    The practices alleged herein - namely, Defendants' use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff McPeak, Plaintiff Rizvi, and the New York Subclass that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - are unfair, deceptive, and misleading in violation of GBL §349.

459.    Because the dangers presented by the presence of PE-PUR Foam pertain to the Recalled Devices' central functionality, i.e., the safety of the devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Patrick

McPeak, Plaintiff Medhi Rizvi, and the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions.

460. Because Philips failed to disclose these material facts, consumers were misled.

461. At all relevant times, Philips had exclusive knowledge that the PE-PUR Foam present in the Recalled Devices could cause users of the Recalled Devices to suffer adverse health effects which do not conform to the products' labels, packaging, advertising, and statements.

462. Philips further knew or reasonably should have known that there was no disclosure on the Recalled Devices' packaging, or at the point of sale, that the products contained dangerous materials that were at risk of causing users of the Recalled Devices to suffer from adverse health effects.

463. At all relevant times, Philips knew or reasonably should have known that Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

464. The foregoing deceptive acts and practices were directed at Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass.

465. Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

466. As a result of Philips' unlawful action, Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass seek to enjoin Defendants' deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater,

as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## TWENTIETH CLAIM FOR RELIEF

### NEW YORK GENERAL BUSINESS LAW

### N. Y. Gen. Bus. Law §350, et seq.

### (on behalf of Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass)

467.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

468.    GBL §350 defines false advertising as: "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account ( among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

469.    The practices alleged herein - namely, Defendants' use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass that the Recalled Devices contained that the Recalled Devices contained the dangerous material PE-PUR Foam which does not conform to the products' labels, packaging, advertising, and statements - fail to reveal material facts in respect to the Recalled Devices, and therefore violate GBL §350.

470.    Because these practices pertain to the Recalled Devices' central functionality, i.e., the safety of the Recalled Devices for human use, these failures reflect material facts, and Philips was obligated to disclose these material facts to Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi,

and the New York Subclass.  A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions.  Because Philips failed to disclose these material facts, consumers were misled.

471.    At all relevant times, Philips knew or reasonably should have known Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips foregoing unfair practices.

472.    At all relevant times, Philips knew or reasonably should have known that Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Philips' foregoing unfair practices.

473.    The foregoing deceptive acts and practices were directed at Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass and have resulted in consumer injury or harm to the New York public.

474.    Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass have been injured as a direct and proximate result of Philips' violations described above as they would not have purchased the Recalled Devices at all had they known of the aforementioned risk of suffering adverse health effects as a result of the presence of the dangerous PE-PUR Foam.

475.    As a result of Defendants' unlawful action, Plaintiff Patrick McPeak, Plaintiff Medhi Rizvi, and the New York Subclass seek to enjoin Philips' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**TWENTY-FIRST CLAIM FOR RELIEF**

**OHIO CONSUMER SALES PROTECION ACT**

**Ohio Rev. Code Ann. §§ 1345, *et seq.***

**(on behalf of Plaintiff James Shorter, Plaintiff Christian Wank, and the Ohio Subclass)**

476.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

477.    Plaintiff Shorter and Plaintiff Wank bring this claim individually and on behalf of the Ohio Subclass.

478.    Ohio's Consumer Sales Protection Act ("Ohio CSPA") prohibits any "unfair or deceptive act or practice in connection with a consumer transaction."

479.    At all relevant times, members of the Ohio Subclass and Defendants were "persons" within the meaning of the Ohio CSPA. *See* Ohio Rev. Code Ann. § 1345.01(B).

480.    Specifically, the Ohio CSPA forbids: (1) representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; and (3) knowingly providing a disclosure that includes a material misrepresentation. *See* Ohio Rev. Code Ann. § 1345.02.

481.    Further, the Ohio CSPA unconscionable acts or practices in connection with a consumer transaction, including but not limited to: (1) knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's ignorance, and (2) knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

482.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with a consumer transaction (as defined by Ohio Rev. Code Ann. § 1345.01(A)) in violation of Ohio Rev. Code Ann. § 1345.02(A) as described in the allegations above.

483.    As a result, Defendants' conduct violates several provisions of the Ohio CSPA, including but not limited to:

(a) Section 1345.02(B)(1): Representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have —here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of developing dangerous health conditions;

(b) Section 1345.02(B)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of developing dangerous health conditions;

(c) Section 1345.03(B)(1): Knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance—the Defendants had knowledge of consumer complaints and the dangers posed by the PE-PUR Foam in the Recalled Devices, which information:

i.   Defendants monitor in the regular operation of its business;

ii.  Is directly related to consumers' interest; and

iii. Is not within the ability of the consumer to reasonably measure and analyze.

(d) Section 1345.03(B)(6): Knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment—Defendants' branding of the Recalled Devices, including but not limited to opinions and other descriptive language, carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves

80

to the risk of developing dangerous health conditions, which branding the Defendants knew consumers would rely upon when purchasing the Recalled Devices.

484.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

485.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Ohio Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that could cause Recalled Device users to develop dangerous health conditions. Plaintiffs and the Ohio Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

486.    If Defendants had disclosed that the Recalled Devices contained toxic materials, such as PE-PUR Foam, that were dangerous to Recalled Device users' health and were of substandard quality, Plaintiffs and the Ohio Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam and were of substandard quality, and Plaintiffs, the Class, and the Ohio Subclass would not have purchased Defendants' Recalled Devices.

487.    Plaintiffs, the Class, and the Ohio Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

488.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

489.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they are inequitably enriched Defendants at the expense of the Ohio Subclass.

490.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and are so oppressive that the Ohio Subclass had little alternative but to submit and caused consumers substantial injury.

491.    The Ohio Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

492.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that their products are fit for human use.

493.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations.

## TWENTY-SECOND CLAIM FOR RELIEF

### OREGON UNLAWFUL TRADE PRACTICES ACT

### ORS §§ 646.605, *et seq.*

### (on behalf of Plaintiff Christopher Brown and the Oregon Subclass)

494.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

495.    Plaintiff Christopher Brown brings this claim individually and on behalf of the Oregon Subclass.

496.    At all relevant times, Plaintiffs, the Oregon Subclass, and Defendants were "persons" within the meaning of ORS § 646.605(4).

497.    The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits unconscionable tactics in connection with selling goods and further prohibits misleading representations in connection with selling goods, *See* ORS §§ 646.607(1) and 646.608. Such a misleading representation "may be a manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." *See* ORS § 646.607(2).

498.    Defendants unlawfully engaged in unconscionable tactics and made misleading representations in connection with the sale of the Recalled Devices as described in the allegations above.

499.    As a result, Defendants' conduct violates several provisions of the Oregon UTPA, including but not limited to:

Section 646.607(1): Employing any unconscionable tactic in connection with selling goods—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to toxins;

Section 646.608(c): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendants' willful failure

to disclose to consumers the dangerous associated with PE-PUR Foam in the Recalled Devices causes the likelihood of confusion or misunderstanding about the sources and certifications of the Recalled Devices in that it causes a likelihood that consumers will believe the Recalled Devices do not contain toxic materials and are regarded as safe for humans to use. This provision does not require proof of actual confusion or misunderstanding. ORS § 646.608(3); and

Section § 646.608(g): Representing that . . . goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another— as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxic PE-PUR Foam.

500. Defendants' omissions in violation of the Oregon UTPA were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the Oregon Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials that are dangerous to consumers' health. Plaintiffs, the Class, and the Oregon Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

501. If Defendants had disclosed that the Recalled Devices contained toxic PE-PUR Foam that was dangerous to consumers' health and were of substandard quality, Plaintiffs, the Class, and the Oregon Subclass would have been aware that the Recalled Devices contained dangerous, toxic PE-PUR Foam and were of substandard quality, and Plaintiffs, the Class, and the Oregon Subclass would not have purchased Defendants' Recalled Devices.

502. Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

503. Plaintiffs, the Class, and the Oregon Subclass relied to their detriment on Defendants' omissions in purchasing the Recalled Devices.

504.     The Oregon Subclass seeks relief, including, *inter alia*, injunctive relief, restitution, damages, (including statutory and punitive damages), attorneys' fees, and costs pursuant to ORS § 646.638, *et seq.*

## TWENTY-THIRD CLAIM FOR RELIEF

## PENNSYLVANIA UNFAIR TRADE PRACTICES

## AND CONSUMER PROTECTION LAW

### 73 Pa. Cons. Stat. Ann. §§201-1, *et seq.*

**(on behalf of the Nationwide Class, Plaintiff Robert Grey, and the Pennsylvania Subclass)**

505.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

506.     At all times mentioned herein, Philips engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. §201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services," "property," "article[s]," "commodit[ies]," or "thing[s] of value" in Pennsylvania.

507.     Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. §201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

508.     For the reasons discussed herein, Philips violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§201-1, *et seq.* Philips' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

509.    Philips repeatedly advertised on the labels and packing for the Recalled Devices, on Philips' websites, and through national advertising campaigns, among other items, that the Recalled Devices were safe and fit for human use. Philips failed to disclose the material information that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use.

510.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to the Recalled Devices without being aware that the PE-PUR Foam used in the Recalled Devices, and therefore the Recalled Devices themselves, were unsafe and unfit for human use. As a direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiffs, the Class, and the Pennsylvania Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam which can cause a number of adverse health effects, including cancer.

511.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, the Class, and the Pennsylvania Subclass in the form of the loss or diminishment of value of the Recalled Devices Plaintiffs, the Class, and the Pennsylvania Subclass purchased, which allowed Defendants to profit at the expense of Plaintiffs, the Class, and the Pennsylvania Subclass.  The injuries to Plaintiffs, the Class, and the Pennsylvania Subclass were to legally protected interests.  The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

512.    Plaintiffs, the Class, and the Pennsylvania Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. §201-9.2 and applicable law.

<u>**TWENTY-FOURTH CLAIM FOR RELIEF**</u>

**TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT**

**Tex. Bus. & Com. Code Ann. §§ 17.41,** *et seq.*

**(on behalf of Plaintiff Sandra Sutton and the Texas Subclass)**

513.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

514.    Plaintiff Sandra Sutton brings this claim individually and on behalf of the Texas

Subclass.

515.    At all relevant times, Plaintiffs, members of the Class, members of the Texas

Subclass, and Defendants were "persons" within the meaning of the Texas Deceptive Trade

Practices-Consumer Protection Act ("Texas DTPCPA"). *See* Tex. Bus. & Com. Code Ann. §

17.45(3).

516.    Texas' DTPCPA prohibits any "[f]alse, misleading, or deceptive acts or practices

in the conduct of any trade or commerce" or any "act or practice which, to a consumer's

detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the

consumer to a grossly unfair degree."

517.    Among other things, the Texas DTPCPA prohibits: (1) causing likelihood of

confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods;

(2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or

associations with, or certification by, another; (3) representing such subject of a consumer

transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits

it does not have which the supplier knows or should reasonably know it does not have; and (4)

representing that such subject of a consumer transaction is of a particular standard, quality,

grade, style, or model, if it is not.

518.    Defendants willfully and purposefully engaged in deceptive, unconscionable, and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Tex. Bus. & Com. Code Ann. §§ 17.50(a)(1)(B) and (3) as described in the allegations above.

519.    As a result, Defendants' conduct violates several provisions of the Texas UDTPA, including but not limit d to:

> (a) Section 17.46(b)(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendants' willful failure to disclose to consumers that the PE-PUR Foam in the Recalled Devices was dangerous to consumers' health while at the same time asserting that the Recalled Devices were beneficial to consumers' healthy causes the likelihood of confusion or misunderstanding in that it causes a likelihood that consumers will believe the Recalled Devices do not contain toxic materials such as PE-PUR Foam that are dangerous to consumers health. This provision does not require proof of actual confusion or misunderstanding;

> (b) Section 17.46(b)(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions; and

> (c) Section 17.46(b)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without exposing themselves to toxic materials such as PE-PUR Foam that could cause them to develop dangerous health conditions.

520.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is an act or practice in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

521. Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the Texas Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are consumers' health. Plaintiffs and the Texas Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

522. If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, Plaintiffs, the Class, and the Texas Subclass would have been aware that the that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality, and Plaintiffs and the Texas Subclass would not have purchased Defendants' Recalled Devices.

523. Plaintiffs, members of the Class, and members of the Texas Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known that the Recalled Devices contained toxic materials such as PE-PUR Foam that could cause consumers to develop dangerous health conditions and were of substandard quality they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

524. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

525. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Texas Subclass.

526.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because it offends public policy, and is so oppressive that the Texas Subclass has little alternative but to submit and causes consumers substantial injury.

527.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

528.    Plaintiffs, the Class, and the Texas Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

529.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described above.

530.    Plaintiff Sandra Sutton provided Defendants with pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 by sending certified letters, return receipt requested, containing the basis of each Plaintiffs' claims on August 18, 2021. Defendants' counsel of record was provided an electronic copy of the letter via email on the same date.

**TWENTY-FIFTH CLAIM FOR RELIEF**

**VIRGINIA CONSUMER PROTECTION ACT**

**Va. Code Ann. § 59.1-196**

**(on behalf of Plaintiff Jamie Ashton, Plaintiff Stanley Fields, and the Virginia Subclass)**

531.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

532.    Each Defendant is a "[p]erson" within the meaning of Va. Code Ann. §59.1-198.

533.    Each Defendant is a "[s]upplier" within the meaning of Va. Code Ann. §59.1-198.

534.   The Recalled Devices are "[g]oods" within the meaning of Va. Code Ann. §59.1-198.

535.   Philips engaged in "[c]onsumer transaction[s]" within the meaning of Va. Code Ann. §59.1-198.

536.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code Ann. §59.1-200(A).

537.   The Virginia CPA makes unlawful specific acts, including:

(a)    "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" (Va. Code Ann. §59.1-200(A)(5));

(b)    "[m]isrepresenting that goods or services are of a particular standard, quality, grade, style, or model" (Va. Code Ann. §59.1-200(A)(6));

(c)    "[a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" (Va. Code Ann. §59.1-200(A)(8)); and

(d)    "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction" (Va. Code Ann. §59.1-200(A)(14)).

538.   Philips violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose the quality of the Recalled Devices and the dangers the PE-PUR Foam posed to Recalled Device users.

539.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the safety, quality, characteristics, and benefits of the Recalled Devices, Philips engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Virginia CPA.

540.    Philips' omissions and misrepresentations described herein had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiffs, the Class, and the Virginia Subclass, into purchasing the Recalled Devices.

541.    The facts regarding the Recalled Devices that Philips knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs, the Class, and the Virginia Subclass, who consider such facts to be important to their purchase decisions with respect to the Recalled Devices.

542.    Plaintiffs, the Class, and the Virginia Subclass had no way of discerning that Philips' representations were false and misleading, or otherwise learning the facts that Philips had concealed or failed to disclose. Plaintiffs, the Class, and the Virginia Subclass did not, and could not, unravel Defendants' deception on their own.

543.    Philips had an ongoing duty to Plaintiffs, the Class, and the Virginia Subclass to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Philips owed Plaintiffs, the Class, and the Virginia Subclass a duty to disclose all the material facts regarding the Recalled Devices.

544.    Plaintiffs, the Class, and the Virginia Subclass were aggrieved by Philips' violations of the Virginia CPA because they were damaged as a direct and proximate result of Philips' deceptive and unfair practices. Plaintiffs, the Class, and the Virginia Subclass relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Recalled Devices.

545.    Had Plaintiffs, the Class, and the Virginia Subclass known of the dangers posed by the PE-PUR Foam in the Recalled Devices, they would not have bought the Recalled Devices, or they would not have paid the premium price that they did and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

546.    As a result of Philips' violations of the Virginia CPA, as alleged herein, Plaintiffs, the Class, and the Virginia Subclass seek an order awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Virginia CPA.

## TWENTY-SIXTH CLAIM FOR RELIEF

### WEST VIRGINIA CONSUMER PROTECTION ACT

### W. Va. Code §§ 46A-6-101, *et seq.*

### (on behalf of Plaintiff Greg Adkins, Plaintiff Michelle Dawn Rickard, and the West Virginia Subclass)

547.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

548.    Plaintiff Greg Adkins and Plaintiff Michelle Dawn Rickard bring this claim individually and on behalf of the West Virginia Subclass.

549.    West Virginia's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

550.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of W.Va. Code § 46A-6-104 as described in the allegations above.

551.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were acts or practices in the conduct of trade or commerce.

552.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

553.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the West Virginia Subclass.

554.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the West Virginia Subclass had little alternative but to submit, which caused consumers substantial injury.

555.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate\ the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are fit for human use.

556.    The West Virginia Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

557.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

558.    Plaintiffs provided notice to Defendants pursuant to W.Va. Code § 46-6-106(b) by sending a certified letter containing the basis of Plaintiffs' claims on August 19, 2021 and provided Defendants' counsel of record with an electronic copy via email on the same date.

## TWENTY-SEVENTH CLAIM FOR RELIEF

### WISCONSIN DECEPTIVE TRADE PRACTICES ACT

### Wis. Stat. §§ 100.18, *et seq.*

### (on behalf of Plaintiff Dave Hilt and the Wisconsin Subclass)

559.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

560.    Plaintiff Dave Hilt brings this claim individually and on behalf of the Wisconsin Subclass.

561.    At all relevant times, Plaintiffs, the Class, and the Wisconsin Subclass, and Defendants were "persons" within the meaning of Wisconsin Statutes. *See* Wis. Stat. § 990.01.

562.    Wis. Stat. § 100.18 prohibits the use of fraudulent representations by a person with the intent to sell, distribute, or increase the consumption of merchandise or anything offered by such person, directly or indirectly, to the public—the prohibition includes but is not limited to any advertisement, statement, representation of any kind to the public relating to the purchase, sale, or use of the merchandise which advertisement, statement, or representation is untrue, deceptive, or misleading.

563.    Defendants willfully engaged in fraudulent, untrue, deceptive, and/or misleading acts as described in the allegations above.

564.    As a result, Defendants' conduct violates Wis. Stat. §§ 100.18 Defendants' branding of the Recalled Devices represented that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to the risk of exposure to toxic PE-PUR Foam.

565.    Defendants' omissions in violation of Wis. Stat. §§ 100.18 83 were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the Wisconsin Subclass reasonably

understood Defendants' omissions to mean that the Recalled Devices did not contain toxic PE-PUR Foam which is dangerous to consumers' health. Plaintiffs, the Class, and the Wisconsin Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

566.    If Defendants had disclosed that the Recalled Devices contained toxic PE-PUR Foam and were dangerous to consumers' health and were of substandard quality, Plaintiffs, the Class, and the Wisconsin Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam and were of substandard quality, and Plaintiffs, the Class, and the Wisconsin Subclass would not have purchased Defendants' Recalled Devices.

567.    Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

568.    Plaintiffs, the Class, and the Wisconsin Subclass relied to their detriment on Defendants' omissions in purchasing the Recalled Devices.

569.    The Wisconsin Subclass requested relief including, *inter alia*, Awarding Plaintiffs and Class members two times their damages, and reasonable attorneys' fees and costs.

## TWENTY-EIGHTH CLAIM FOR RELIEF

**WYOMING CONSUMER PROTECTION ACT**

**Wyo. Stat. Ann. §§ 40-12-101, *et seq.***

**(on behalf of Plaintiff Donna Heynes and the Wyoming Subclass)**

570.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

571.    Plaintiff Donna Heynes brings this claim individually and on behalf of the Wyoming Subclass.

572.    At all relevant times, members of the Wyoming Subclass and Defendants were "persons" within the meaning of Wyoming's Consumer Protection Act ("Wyoming CPA"). *See* Wyo. Stat. Ann. § 40-12-102(a)(i).

573.    Wyoming's CPA prohibits any "unfair or deceptive acts or practices."

574.    Among other things, Wyoming's CPA forbids: (1) representing that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; (2) representing that merchandise is of a particular standard, grade, style or model, if it is not; and (3) engaging in unfair or deceptive acts or practices.

575.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by Wyo. Stat. Ann. § 40-12-102(a)(vi)) in violation of Wyo. Stat. Ann. § 40-12-105(a)(xv) as described in the allegations above.

576.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were acts or practices in the conduct of trade or commerce.

577.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

578.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Wyoming Subclass.

579.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Wyoming Subclass has little alternative but to submit, which caused consumers substantial injury.

580.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of a product is responsible for ensuring that it is fit for human use.

581.    The Wyoming Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

582.    As a direct and proximate result of the foregoing acts and practices, Defendants have received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

583.    Plaintiffs provided notice to Defendants pursuant to Wyo. Stat. Ann. § 40-12-109 by sending a certified letter containing the basis of Plaintiffs' claims on August 19, 2021 and sending an electronic copy to Defendants' counsel of record via email on the same date.

584.    The Wyoming Subclass requests relief including, *inter alia*, damages, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A. An order certifying this action and the Class and State Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and State Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and State Subclasses;

B. An order declaring that Philips' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Alabama, Connecticut, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, Texas, Virginia, West Virginia, Wisconsin, and Wyoming consumer protection statutes, and that Philips is liable to Plaintiffs, members of the Class, and members of the State Subclasses, as described herein, for damages arising therefrom;

C. An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Philips from continuing the unlawful practices alleged herein, and injunctive relief to remedy Philips' past conduct;

D. A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses all appropriate damages, in an amount to be determined at trial;

E. A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate.

F.  A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses prejudgment and post-judgment interest, as permitted by law;

G.  A judgment awarding Plaintiffs, members of the Class, and members of the State Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H.  Grant such other legal, equitable or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

DATED:          August 19, 2021                    Respectfully submitted,

*/s/ Sean K. McElligott*
Sean K. McElligott (Mass. BBO #651710)
David S. Golub (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
smcelligott@sgtlaw.com
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

Joseph P. Guglielmo (BBO# 671410)
Erin G. Comite (*pro hac vice* forthcoming)
Alex Outwater (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com